04-7423.071                                          October 2, 2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

APRIL ORTIZ, on her own behalf      )
and as Administrator for the        )
ESTATE OF MAY MOLINA and MICHAEL    )
ORTIZ, Deceased, and SHANNON        )
GUZMAN,                             )
      Plaintiffs,                   )
                                    )
      v.                            )      No. 04 C 7423
                                    )
CITY OF CHICAGO, et al.,            )
                                    )
      Defendants.                   )

## MEMORANDUM OPINION

The defendants have moved to bar the proposed testimony of plaintiff's medical expert, Dr. Howard Adelman, concerning the cause of May Molina's death. The motion is made pursuant to Daubert v. Merrell, Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and defendants' position is that Dr. Adelman's proffered opinion as to the cause of death is not reliable.

Dr. Adelman's position has varied somewhat over time, but his final opinion is expressed in the conclusion of his report of March 6, 2007:

THE OUTCOME:

Without evidence to the contrary, it is my opinion, to
a reasonable degree of medical probability, that Ms.
Molina, deprived of her diabetic and thyroid
medications fell into a diabetic coma and died. Had
she been brought to a hospital even as late as when her
lawyer visited with her; [sic] the outcome would, to a

- 2 -

high degree of medical probability, [have] been much
different.  In the first place, treatment of her
diabetes in the form of monitoring her blood sugar and
titrating her insulin would probably have prevented her
fatal coma.  Even if – and this is a big "**if**" she did
lapse into coma on the basis of a narcotic overdose,
this would, mostly likely, have been discovered at the
hospital because it is one of the differential
diagnoses of coma, and would have been treated.

My conclusion is and remains, to a high degree of
medical probability and virtual certainty, that the
proximate cause of May Molina's death was not being put
in a hospital where she belonged.

(Pls.' Resp. To Defs.' Mot. To Bar Pls.' Expert Adelman Report,

Ex. D, at 10.)


There are three elements to Dr. Adelman's opinion:

(a)  because Ms. Molina was deprived of her diabetic and
     thyroid medications, she fell into a diabetic coma and
     died;
(b)  there is also a small possibility that Ms. Molina
     lapsed into a coma "on the basis of a narcotic
     overdose"; and
(c)  in either event, had she been taken to a hospital, her
     blood sugar would have been monitored and she would
     have been appropriately treated with insulin,
     preventing the fatal diabetic coma; or, if the coma was
     the result of a narcotic overdose, that, too, would
     have been diagnosed and treated at the hospital.

We will examine Dr. Adelman's basis for each of these three

elements of his opinion.

### Whether the Death Was the Result of a Diabetic Coma

The evidence is that Ms. Molina had Type II diabetes.  There

is no evidence as to how serious the condition was, nor does it

- 3 -

appear that Dr. Adelman made any effort to determine whether Ms. Molina had been under treatment for the condition, and, if so, what the treatment was and for how long she had received it. There is evidence that Ms. Molina did not have her "diabetes medication" with her at the lockup; her daughter brought it to her at the lockup, only to be told by the lockup personnel that it could not be accepted. There is no indication as to what the diabetic medication was. It was not insulin, but some unspecified kind of "pills." The evidence does not show when Ms. Molina had last taken a pill, or what the effect of not having the pills available in the lockup was, if any, on Ms. Molina's diabetic condition. Dr. Adelman's simple reference to Ms. Molina's being "deprived of her diabetic and thyroid medications" is not a medical explanation of how her not having access to the pills from the time of her arrest would have caused her to lapse into a diabetic coma.

In his deposition, Dr. Adelman had to admit that most of the medical evidence is inconsistent with a diagnosis of diabetic coma. For one thing, Ms. Molina was a Type II diabetic, and diabetic ketoacidosis, the cause of diabetic coma, does not normally occur in persons with Type II diabetes. (Tr. Of Adelman Dep., Jan 27, 2006, at 80.)

Moreover, it is normal to find elevated levels of glucose, generally in the range of 400-500, in diabetic ketoacidosis,

- 4 -

whereas Ms. Molina's glucose level postmortem was only 112.  (Id. at 80-81.)  Dr. Adelman says that glucose levels can fall postmortem (contrary to defendants' expert Dr. Choi, who says they cannot).  The court is not in a position to resolve this factual dispute, but, whether or not it is possible for postmortem levels to drop as a general matter, there is no evidence that Ms. Molina's glucose was higher than 112 at any time after her arrest.  There is, therefore, no evidence that she had the extremely high glucose levels normally associated with ketoacidosis.

Another finding that was atypical of diabetic ketoacidosis is that, according to the toxicology report, there were no ketones found in Ms. Molina's blood.  Dr. Adelman admitted that if death had come about as a result of diabetic ketoacidosis, he would expect to find ketones present.  (Id. at 79.)

Another reason Dr. Adelman has for concluding that diabetic coma was the cause of death is that he believes Ms. Molina's breathing in the lockup consisted of Kussmaul respirations. These are quick, deep breaths that are "the body's attempt to counteract the ketoacidosis that's building up in the blood." (Id. at 68.)  Dr. Adelman admitted in his deposition that the witnesses in the lockup did not describe the type of rapid breathing that is indicative of Kussmaul respirations.  (Id. at 71.)  But they did describe "abnormal breathing patterns," and

- 5 -

this is what led him to think it was Kussmaul breathing, because Kussmaul is an abnormal breathing pattern. (<u>Id.</u> at 71-75.) The pattern the witnesses described was that Ms. Molina would snore, stop snoring, and then begin snoring again. (<u>Id.</u> at 71.) Despite the fact that no one described Ms. Molina's breathing as deep and rapid, Dr. Adelman concluded that Ms. Molina's breathing "could have been a Kussmaul respiration." (<u>Id.</u> at 77.)

What Dr. Adelman's opinion concerning diabetic ketoacidosis comes down to, then, is that Ms. Molina was a Type II diabetic, was without her pills, and died of a coma. Therefore, it was a diabetic coma. He dismisses or sidesteps all of the contrary indications — that diabetic ketoacidosis, the cause of diabetic coma, does not normally occur in persons with Type II diabetes, that Ms. Molina did not have elevated levels of glucose postmortem, that there were no ketones found in her blood, and that her breathing was not deep and rapid. Nor did he find it necessary to determine what Ms. Molina's diabetic condition actually was or what medication she had been taking for it.

The court concludes that Dr. Adelman's opinion that Ms. Molina died as a result of a diabetic coma is based upon insufficient information to be considered reliable under the <u>Daubert</u> standard. It is almost pure speculation and ignores all of the relatively hard evidence that points to a contrary conclusion.

- 6 -

Dr. Adelman's opinion refers to the fact that Ms. Molina, "deprived of her diabetic and thyroid medications, fell into a diabetic coma and died." (Adelman Report at 10.) He offers no explanation of what the thyroid medication was, what Ms. Molina's thyroid condition was, or what effect the thyroid medication would have had if Ms. Molina had taken it in the lockup. The reference to the thyroid medication, as far as the court can tell from Dr. Adelman's opinion, is without medical significance.

In Ervin v. Johnson & Johnson, Inc., 492 F.3d 901, 904-05 (7th Cir. 2007), the Court of Appeals made an observation that is relevant to Dr. Adelman's conclusion that because Ms. Molina had Type II diabetes and was without her unspecified diabetes medication, she must have died from a diabetic coma:

> The mere existence of a temporal relationship between taking a medication and the onset of symptoms does not show a sufficient causal relationship.

In Ervin, the issue was whether the plaintiff's injury was caused by taking the medication manufactured by the defendant, whereas the issue here is whether Ms. Molina's coma was caused by not taking her diabetes medication. But the applicable principle is the same: there has to be more than a temporal coincidence in order to prove causation. See also General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997) (citations omitted):

> [C]onclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in either Daubert or

the Federal Rules of Evidence requires a district court
to admit opinion evidence that is connected to existing
data only by the *ipse dixit* of the expert. A court may
conclude that there is simply too great an analytical
gap between the data and the opinion proffered.  That
is what the District Court did here, and we hold that
it did not abuse its discretion in so doing.

### Whether There is a "Small Possibility" that Ms. Molina Lapsed into Coma "on the Basis of a Narcotic Overdose"

The defendants' view of the cause of death is, of course, that Ms. Molina died as a result of a coma caused by an overdose of heroin.  Dr. Adelman's position that she died as a result of a diabetic coma appears to give plaintiff a better chance of recovery against the defendants, since there is evidence that the lockup personnel were informed that Ms. Molina was diabetic and needed her diabetic medication.  (We are aware of no evidence indicating that defendants were aware that Ms. Molina had ingested heroin.)  Dr. Adelman's opinion about the "small possibility" of a coma induced by narcotic overdose would lend weight to his opinion that the coma was instead diabetic.

However, Dr. Adelman's opinion about narcotic overdose is not admissible, because, like his opinion about the diabetic coma, it is not reliable.  It is based almost exclusively on his differential diagnosis; that is, if the death was caused by a diabetic coma, it was not caused by a narcotic overdose.  We have

- 8 -

just seen that Dr. Adelman's opinion that death was caused by a diabetic coma is not reliable.[1]

### Whether Hospitalization Would Have Prevented Ms. Molina's Death

It is obviously possible that if Ms. Molina's condition had been diagnosed and treated early enough at a hospital, and the treatment had been effective, she would not have died. It does not require medical expertise to reach this self-evident conclusion. But the primary question in this wrongful death case is one that logically precedes the question of whether hospitalization would have saved Ms. Molina's life. It is the question of whether, under all of the facts and the circumstances shown by the evidence as to what took place between the time of Ms. Molina's arrest and the time of her death, the defendants either negligently or recklessly disregarded facts that indicated a need for hospitalization. Dr. Adelman's opinion gives the plaintiffs no help on that issue because he does not show the existence of any facts which should have alerted the defendants to a need for hospitalization. All his opinion establishes is that May Molina's breathing was "noticed" by the lockup personnel (from which he concludes it was probably Kussmaul breathing).[2] This is a non sequitur. In short, there is nothing in Dr.

---

[1] Dr. Adelman admitted in his deposition that Ms. Molina's death could have been caused by a heroin overdose. (Tr. Of Adelman Dep. At 92-94.)

[2] Id. at 73-76.

- 9 -

Adelman's opinion that suggests an apparent need for hospitalization, especially when the opinion is considered in the light of the other evidence in the case indicating that no medical crisis was evident.

Dr. Adelman has no admissible opinion as to what the medical condition was that might have been treated at a hospital or what it was that caused Ms. Molina's death. Therefore, there is no reliable basis for his opinion that hospitalization would have prevented her death.

**<u>CONCLUSION</u>**

The court finds that the proffered opinion of plaintiffs' expert, Dr. Howard Adelman, is not reliable, and defendants' motion to bar his testimony is therefore granted. Dr. Adelman will not be permitted to give his opinion as to the cause of May Molina's death or his opinion that the defendants should have taken Ms. Molina to a hospital.

DATE:          October 2, 2007

ENTER:         _____
               John F. Grady, United States District Judge