IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| APRIL ORTIZ, as Administrator for THE ESTATES OF MAY MOLINA and MICHAEL ORTIZ, Deceased, and SHANNON GUZMAN, | ) ) ) ) | |
| | ) | 04 C 7423 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Grady |
| CITY OF CHICAGO, CHICAGO POLICE OFFICERS AVIS JAMISON, MARTHA GOMEZ, M. RAMIREZ, DEBRA HOLMES, NICK. SPENCER, DIANE YOST, BEVERLY GILCHRIST, RICHARD HALJEAN, THOMAS GAYNOR, R. BAEZA, NARI ISAKSON, G. ESPINOSA, STEPHEN NASSER, DEJESUS, FABIAN SALDANA, ROBERT STATSCH, CATHERINE ZIEMBA, JOSE TORRES, JOSEPH GIORANGO, ARTHURINIE PRYOR, PATRICK McKENNA, THOMAS BECKER, WILLIAM WALLACE, VINCENT DEFRANCO, DETENTION AIDE TAMARA LEMON-REDMOND, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | Jury Trial Demanded |

## FIFTH AMENDED COMPLAINT

Plaintiffs, MICHAEL ORTIZ, SHANNON GUZMAN, and APRIL ORTIZ, as

Administrator for THE ESTATE OF MAY MOLINA and MICHAEL ORTIZ, Deceased,

by their attorneys, LOEVY & LOEVY, complain of Defendants, CITY OF CHICAGO,

AVERS JAMISON (Star No. 9772), MARTHA GOMEZ (Star No. 12589), M.

RAMIREZ (Star No. 5143), DEBRA HOLMES (Star No. 5143), NICK SPENCER (Star

1

No. 14835), RICHARD HALJEAN (Star No. 9860), FABIAN SALDANA (Star No.

2632), THOMAS GAYNOR (Star No. 5069), R. BAEZA (Star No. 4918), NARI

ISAKSON (Star No. 13920), G. ESPINOSA (Star No. 17676), STEPHEN NASSER (Star

No. 3218), DeJESUS (Star No. 9817), ROBERT STATSCH (Star No. 187), TAMARA

LEMON-REDMOND (Emp. No. 52917), DIANE YOST (Star No. 11631), BEVERLY

GILCHRIST (Emp. No. 47329), CATHERINE ZIEMBA (Star No. 15358), JOSE

TORRES (Star No. 996), JOSEPH GIORANGO (Star No. 303), ARTHURINE PRYOR

(Star No. 17547), PATRICK McKENNA (STAR No. 11711), THOMAS BECKER (Star

No. 43), WILLIAM WALLACE (Star No. 22), VINCENT DEFRANCO (Star No. 1494),

as follows:

## Introduction

1.    This action is brought under Section 1983 to redress the deprivation under
color of law of Plaintiffs' rights as secured by the United States Constitution.

2.    On May 26, 2004, May Molina died in the custody of Defendant City of
Chicago. Before her death, Ms. Molina was a well-known community and political
activist. Specifically, she was a frequent and vocal critic of civil rights violations
committed by the Chicago Police Department. For years, Ms. Molina publicly
participated in protests, demonstrations, and campaigns to support constitutional liberties.

3.    This case arises because Defendant officers retaliated against May Molina
and her family. That retaliation ultimately led to the death of May Molina.

2

## Jurisdiction and Venue

4.     This Court has jurisdiction of the action under 28 U.S.C. § 1331.  Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims all occurred within district.

## The Parties

5.     Plaintiff May Molina was the mother of Plaintiff Michael Ortiz and Plaintiff April Ortiz.  Shannon Guzman was Michael Ortiz's domestic partner.

6.     The Defendant Officers are employed by the City of Chicago.  The City of Chicago acts through the actions of its employee agents.  For purposes of the Monell claim pled below, the terms "Defendants" and "Defendant Officers" as used in the allegations of this Complaint include the actions of all of the named officers identified by the City in this action, as well as all of the employees of the City of Chicago.

## Background

7.     May Molina's children, including Plaintiffs April and Michael Ortiz, worked with her as community activists to support the rights of criminal suspects and defendants in police custody.

8.     The political activism of Ms. Molina and her family was well known to various  members of the Chicago Police Department.  To retaliate against Ms. Molina and her children for their activism, Defendants committed the following actions that ultimately led to May Molina's death.

3

### The May 24, 2004 Raid

9.      On the evening of May 24, 2004, Defendant officers including Spencer, Haljean, Gaynor, R. Baeza, Isakson, Espinosa, S. Nasser, Dejesus, Saldana, and Lt. Statsch searched Molina's 1st floor apartment and Michael Ortiz's 2nd floor apartment at 3526 N. Halsted in Chicago, Illinois.  At the time that Ms. Molina's apartment was raided, Ms. Molina was at home visiting with Shannon Guzman, Michael Ortiz's fiance.

10.      Various Defendants proceeded to ransack both Ms. Molina's and Mr. Ortiz's residences, overturning furniture, breaking personal belongings, and throwing personal property.  Various Defendants then arrested both Plaintiffs, alleging that they possessed illegal drugs when, in fact, they did not.

### Michael Ortiz

11.      Michael Ortiz had no illegal contraband in his apartment.  Nevertheless, Defendant officers falsely claimed Mr. Ortiz had drugs in his apartment and arrested him, charging him with possession of heroin and/or cocaine.  In reality, there was neither heroin nor cocaine in Mr. Ortiz's apartment.

12.      Defendant officers also falsely accused Mr. Ortiz of possessing a substance they claimed was C-4 plastic explosives, but which was really nothing but a compound used for drywall installation.

13.      All charges against Mr. Ortiz were eventually dropped after Defendants were forced to admit that no illegal contraband was recovered in his apartment.

4

14. Even after it was determined that Mr. Ortiz had committed no crime, nevertheless, Defendants continued to detain him, thereby causing him to miss the funeral of his mother, who died in Defendants custody as described below.

15. As a result of the illegal detention and false arrest by Defendants, Mr. Ortiz suffered emotional damages.

### May Molina

16. Immediately after the Defendant officers entered her apartment, Ms. Molina was detained by Defendant officers. She was taken to the front room and handcuffed to her wheelchair, each hand handcuffed to a side of the chair.

17. From the time that the police broke into her apartment and immediately cuffed her to her wheelchair until her death about 36 hours later, Ms. Molina was continuously in the custody of the Chicago Police Department, including the custody of Defendants Jamison, Gomez, Ramirez, Holmes, Yost, Gilchrist, Ziemba, Torres, Giorango, Pryor, Wallace, Becker, McKenna, Defranco, and Lemon-Redmond, among others, just before her death.

18. After Ms. Molina's arrest, she was read her Miranda rights and searched before Defendant officers took her from her house.

19. Various Defendants took Ms. Molina to the Chicago Police District located at Halsted and Addison Street, where she was booked. Ms. Molina was fingerprinted, searched again, and given different clothes to wear while incarcerated at the Chicago

Police Department lockup.

20.     In the evening of May 24, 2004, April Ortiz, Ms. Molina's daughter went to the Chicago Police District Station at Halsted and Addison Streets. She asked a Defendant Officer ("Officer No. 1"), if she could deliver some medications for Ms. Molina's health ailments, which included a thyroid condition, asthma and diabetes.

21.     Officer No. 1 told April Ortiz that the Chicago Police Department does not allow people in custody to receive medication. Ms. Ortiz told Officer No. 1 that Ms. Molina needed the medication for her serious medical conditions. Officer No. 1 did not change his mind.

22.     On May 25, 2004, about eight hours before May Molina died, Ms. Molina's lawyer, Jerry Bischoff, went to visit her in the Chicago Police Department lockup. He saw that Ms. Molina appeared unwell and was somewhat incoherent. She was also uncomfortable because she had not been provided a chair that would allow her to sit down.

23.     Ms. Molina told her attorney that she had been unable to take her medications. Mr. Bischoff advised Defendants Gilchrist and Yost that Ms. Molina should be taken to Cermak Hospital because she was ill in the Department lockup. None of the individual Defendants complied with this request for medical attention.

24.     Roughly eight hours after her attorney attempted unsuccessfully to obtain medical attention for Ms. Molina, she died in her cell.

### Shannon Guzman

25.     Shannon Guzman is Michael Ortiz's domestic partner.  She was in the same room with Molina when Defendant officers entered Ms. Molina's residence.  Like May Molina, Ms. Guzman too was immediately detained by  Defendant officers after they entered the apartment, whereupon they were both taken to the front room and handcuffed.

26.     When Ms. Guzman was taken to the front room, her purse remained in another room where Defendant officers were searching.   The purse contained over $390 cash from her job as a taxi driver.  In addition, Ms. Guzman had approximately $2,000 at Ms. Molina's apartment that Ms. Guzman saved to rent a new apartment.   That money was kept locked in Ms. Molina's apartment for safe keeping.

27.     After detaining her in the front room, Defendant officers later told Ms. Guzman that she could leave because she did not live there.  Ms. Guzman asked for her purse to be returned to her because it had her money, keys, and driver's license.

28.     When Ms. Guzman asked for her purse, an unknown Defendant Officer cursed at her and told her to leave or else the officers would find a reason to arrest her. The Officer told Ms. Guzman that her purse was likely buried and could not be found, even though the Officers had possessed the purse previously.

29.     Ms. Guzman was not able to retrieve her purse until later in the evening after the police had all left.  By that time, all of her money was gone, as was the $2,000 Ms. Guzman had saved over time to rent a new apartment.

7

**Count I – 42 U.S.C. § 1983: Objectively Unreasonable Treatment**

**Defendants Jamison, Gomez, Ramirez, Holmes,
Yost, Gilchrist, Ziemba, Torres, Giorango, Pryor, Wallace,
Becker, McKenna, Defranco, Lemon-Redmond, Haljean and Spencer**

30.    Each Paragraph of this Complaints is restated fully herein.

31.    During discovery, the Defendants have identified the following individuals as being responsible for providing medical attention to May Molina: Jamison, Gomez, Ramirez, Holmes, Yost, Gilchrist, Ziemba, Torres, Giorango, Pryor, Wallace, Becker, McKenna, Defranco, Lemon-Redmond, Haljean and Spencer. According to Defendants, these are the only individuals who were responsible for providing medical attention to Ms. Molina during her detention.

32.    As described more fully above, while May Molina was held by these Defendants, as well as by other City employees, they failed to provide her with necessary medical attention.

33.    As a result of the unjustified and unconstitutional conduct of employees of the Chicago Police Department, May Molina suffered pain, injury, and, ultimately died. She also suffered emotional distress before she died.

34.    In this manner, the conduct of these individuals violated the 4th Amendment to the United States Constitution in that it was objectively unreasonable for them to ignore May Molina's medical needs. Pleading in the alternative, they also violated Ms. Molina's rights under the Fifth and Fourteenth Amendments.

35.    The misconduct described in this Count was undertaken with malice, willfulness, and deliberate indifference to the rights of others.

36.    The actions of Defendants proximately caused the injuries suffered.

37.    The misconduct described in this Count was undertaken under the policy and practice of the Chicago Police Department in that:

a.    As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b.    As a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff; specifically, Chicago Police Officers accused of misconduct can be confident that the Office of Professional Standards will not investigate those accusations in earnest and will refuse to recommend discipline even where the Officer has engaged in misconduct;

c.    Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiff in this Count on a frequent basis, yet the

9

Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

      d.     Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case;

      e.     The City of Chicago has failed to act to remedy the patterns of abuse describe in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here;

      f.     As a matter of express policy, the City of Chicago does not retain any records which are more than five years old documenting allegations of misconduct against police officers, thereby preventing the City from ascertaining any patterns of abuse which might develop over the course of a police officer's career;

      g.     As a matter of express policy, the City refuses to take into account patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same sort of misconduct 20 times in row, the Office of Professional Standards ("O.P.S.") is forbidden by the City from considering those allegations if they are deemed unsustained; and

      h.     The problem with the policy identified in the preceding paragraph is that by its own accounting, the City sustains less than 5% of the complaints brought against police officers for violations of civil rights.

i.    As a matter of policy and practice, the Chicago Police Department refuses to permit detainees to access their medications in the lock-up facilities, even where those detainees have objective and serious needs and even where the medications are necessary for the detainees health.

38.    As a result of these policies and practices, May Molina suffered damages, including but not limited to pain and injury and emotional distress.

### Count II – 42 U.S.C. § 1983: Deliberate Indifference

**Defendants Jamison, Gomez, Ramirez, Holmes,
Yost, Gilchrist, Ziemba, Torres, Giorango, Pryor, Wallace,
Becker, McKenna, Defranco, Lemon-Redmond, Haljean and Spencer**

39.    Each Paragraph of this Complaints is restated fully herein.

40.    During discovery, the Defendants have identified the following individuals as being responsible for providing medical attention to May Molina: Jamison, Gomez, Ramirez, Holmes, Yost, Gilchrist, Ziemba, Torres, Giorango, Pryor, Wallace, Becker, McKenna, Defranco, Lemon-Redmond, Haljean and Spencer.  According to Defendants, these are the only individuals who were responsible for providing medical attention to Ms. Molina during her detention.

41.    As described more fully above, while May Molina was held by these Defendants, as well as by other City employees, they failed to provide her with necessary medical attention.

11

42. As a result of the unjustified and unconstitutional conduct of Defendants, May Molina suffered pain, injury, and, ultimately died. She also suffered emotional distress before she died.

43. In this manner, even if the conduct of Defendants is evaluated under the 14th Amendment to the United States Constitution, their conduct violated the 14th Amendmeant in that it was objectively unreasonable and deliberately indifferent to May Molina's objectively serious medical needs.

44. The misconduct described in this Count was undertaken with malice, willfulness, and deliberate indifference to the rights of others.

45. The actions of Defendants proximately caused the injuries suffered by May Molina.

46. The misconduct described in this Count was undertaken under the policy and practice of the Chicago Police Department in the manner described above.

### Count III – 42 U.S.C. § 1983: False Arrest/Unlawful Detention

### All Defendants

47. Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

48. During discovery, the Defendants have identified the following individuals as being responsible for arresting the Michael Ortiz: Spencer, Haljean, Gaynor, Baeza, Isakson Espinosa, Nasser, DeJesus, Saldana, Statsch. According to Defendants, these are the only individuals who were responsible for arresting Michael Ortiz.

49.     As described above, the Defendant officers  falsely arrested and unlawfully detained Michael Ortiz without justification and without probable cause.

50.     After Defendants and other members of the Chicago Police Department learned that the substances seized from his apartment were not illegal drugs and were not illegal, those individuals permitted him to remain in jail for weeks longer, notwithstanding their knowledge of Mr. Ortiz' innocence.

51.     Additionally, Plaintiff May Molina was detained unreasonably in violation of her Fourth Amendment rights because there were no extraordinary circumstances to have justified leaving her in the jail cell without bringing her to court.  Various members of the Chicago Police Department, including the Defendant Officers, were responsible for detaining Ms. Molina longer than she should have been.

52.     The misconduct described in this Count is consistent with the policies and practices of the Chicago Police Department.

53.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

54.     All of the misconduct described in this Count was undertaken under the policy and practice of the Chicago Police Department in the manner described above.

55.     As a result of the above-described wrongful infringement of Plaintiffs' rights, they suffered damages, including but not limited to mental distress and anguish.

## Count IV – 42 U.S.C. § 1983: First Amendment Retaliation

### All Defendants

56. Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

57. The First Amendment to the United States Constitution guarantees Plaintiffs' rights to speak out on matters of public concern without fear of unjust retaliation.

58. As more fully stated in the preceding paragraphs, Plaintiffs engaged in protected speech on matters of public concern by publicly opposing the violation of civil rights by members of the Chicago Police Department. In retaliation for their exercise of protected speech, Defendant officers and other members of the Chicago Police Department retaliated against Plaintiffs in the manner described in the preceding paragraphs.

59. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

60. As a result of the Defendant officers' unconstitutional conduct, Plaintiffs suffered, financial loss, pain and injury, as well as emotional distress.

61. The misconduct described in this Count was undertaken under the policy and practice of the Chicago Police Department in the manner described above.

14

## Count V – 42 U.S.C. § 1983: Equal Protection

### All Defendants

62.     Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

63.     As described more fully above, Defendants and other members of the Chicago Police Department, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, denied Plaintiffs Michael Ortiz and May Molina Equal Protection of the law in violation of their Constitutional rights.

64.     Pleading in the alternative, these individuals discriminated against Plaintiffs compared to other similarly situated individuals who were detained in the lockup in terms of the time they were detained without lawful justification.  Further pleading in the alternative, Plaintiffs were discriminated on the basis of their membership in a protected class, as well as due to their membership in a "class of one" based on their perceived animosity toward the police department and its officers, as described above.  Said discrimination was irrational, and served no legitimate law enforcement purpose.

65.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

66.     As a result of the Defendant officers' unconstitutional conduct, Plaintiffs suffered, financial loss,  pain and injury, as well as emotional distress.

67.     The misconduct described in this Count was undertaken under the policy

15

and practice of the Chicago Police Department in the manner described above.

### COUNT VI – 42 U.S.C. § 1983: Unreasonable Search & Seizure

### Defendants Spencer, Haljean, Gaynor, Baeza, Isakson
### Espinosa, Nasser, DeJesus, Saldana, Statsch

68.     Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

69.     As described more fully above, Defendant officers conducted an unconstitutional search and seizure.

70.     More specifically, on information and belief, the Defendant officers had neither a warrant nor consent to search the home, and they continued an extended and unreasonable search of the home for no purpose and with no lawful justification.

71.     Furthermore, neither the extended stay within the home nor the actions of the Defendant officers within the home were lawfully justified by the circumstances confronting the officers.

72.     As a result of the violation of their rights described above, Plaintiffs suffered damages, including but not limited to financial loss and emotional distress.

73.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

74.     The misconduct described in this Count was undertaken under the policy and practice of the Chicago Police Department in the manner described above.

16

## Count VII – State Law Claim: Wrongful Death

## Defendants Spencer and Haljean

75.     Each of the Paragraphs in this Complaint is incorporated herein.

76.     As described more fully above, while May Molina was in custody at the Chicago Police Department lockup, Defendants and other members of the Chicago Police Department breached their duty of care by withholding needed medical care.

77.     Defendant committed that act with the intent to cause harm or with substantial certainty that harm would result.

78.     The Defendant officers' actions were undertaken intentionally, willfully and/or recklessly, and were the proximate cause of May Molina's substantial bodily harm and death, as well as her great pain and suffering.

79.     The misconduct described in this Count was undertaken with intentional disregard of May Molina's rights.

80.     As a result of the Defendant officers' actions, the Estate has incurred medical and funeral expenses, and suffered injury, including loss of society and companionship, and any other damages permitted by law.

## Count VIII – State Law Claim:

## Survival Action – Intentional Infliction of Emotional Distress

## Defendants Spencer and Haljean

81.     Each of preceding paragraphs is incorporated as if restated fully herein.

17

82.     As described more fully in the preceding paragraphs, Defendants and other members of the Chicago Police Departrment engaged in extreme and outrageous conduct with respect to Plaintiff.

83.     The misconduct described in this Count was rooted in an abuse of power or authority and was otherwise extreme and outrageous.

84.     The misconduct described in this Count was undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

85.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

86.     As a proximate result of this misconduct, May Molina suffered severe emotional distress and anguish.

### Count IX – State Law Claim: Illinois Civil Rights Act – 740 ILCS § 23/5(c)(2)

#### Defendants Spencer, Haljean, Gaynor, Baeza, Isakson Espinosa, Nasser, DeJesus, Saldana, Statsch

87.     Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

88.     The misconduct described above is a violation of Plaintiffs' rights as secured by the Illinois Constitution.

89.     Specifically, by falsely arresting Plaintiffs and taking Shannon Guzman's money, and retaliating against both of them and May Molina for exercising their right to freedom of speech, and detaining, and over-detaining, them without

18

probable cause, Defendants violated Plaintiffs' inherent and inalienable rights to life, liberty and the pursuit of happiness under Article I, Section 1 of the Illinois Constitution.

90.     Moreover, by retaliating against Plaintiffs for exercising their right to freedom of speech, Defendants violated their right to speak, write and publish freely under Article I, Section 4 of the Illinois Constitution.

91.     In addition, by retaliating against Plaintiffs for exercising their right to freedom of speech, Defendant officers also violated their right to apply for redress of grievances under Article I, Section 5 of the Illinois Constitution.

92.     Furthermore, by falsely arresting and unlawfully detaining Michael Ortiz, seizing Shannon Guzman's money, and retaliating against Plaintiffs for exercising their rights to freedom of speech, Defendants violated Plaintiffs' rights to be secure in their person against unreasonable searches, seizures, and invasions of privacy under Article I, Section 6 of the Illinois Constitution.

93.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others

94.     As a result of these deprivations of Plaintiffs' rights as secured by the Illinois Constitution, they suffered damages, including but not limited to attorneys' fees and costs, for which the Defendant officers are liable.

95.     The misconduct described in this Count was undertaken by Defendant Officers within the scope of their employment such that their employer, CITY OF

CHICAGO, is liable for their actions.

## Count X – State Law Claim: False Imprisonment
### Defendants Spencer, Haljean, Gaynor, Baeza, Isakson
### Espinosa, Nasser, DeJesus, Saldana, Statsch

96.   Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein

97.   Plaintiff Michael Ortiz was arrested and imprisoned, and thereby had his liberty to move about unlawfully restrained, despite Defendant officers' knowledge that there was no probable cause for doing so.  This included the over-detention of Mr. Ortiz after Defendants learned that Mr. Ortiz did not possess illegal drugs.

98.   Defendant officers' actions set forth above were undertaken intentionally, with malice and reckless indifference to Michael Ortiz's rights.

99.   As a result of the above-described wrongful infringement of Michael Ortiz's rights, Plaintiff suffered damages, including but not limited to mental distress and anguish.

100.   The misconduct described in this Count was undertaken by the Defendant officers within the scope of their employment such that their employer, CITY OF CHICAGO, is liable for their actions.

## Count XI – State Law Claim: Malicious Prosecution

### Defendants Spencer, Haljean, Gaynor, Baeza, Isakson
### Espinosa, Nasser, DeJesus, Saldana, Statsch

101.   Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

102.   Plaintiff Michael Ortiz was improperly subjected to judicial proceedings for

20

which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Michael Ortiz's favor in a manner indicative of innocence.

103.    Defendant officers accused Plaintiff Ortiz of criminal activity knowing those accusations to be without probable cause, and they made written and other statements with the intent of exerting influence to institute and continue judicial proceedings.

104.    Statements of the Defendant officers regarding Plaintiff's alleged culpability were made with knowledge that the statements were false and perjured. In so doing, the Defendant officers fabricated evidence and withheld exculpatory information.

105.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

106.    As a result of the above-described wrongful infringement of Plaintiff's rights, he has suffered financial and other damages, including but not limited to substantial mental stress and anguish.

107.    The misconduct described in this Count was undertaken by the Defendant officers within the scope of their employment such that their employer, CITY OF CHICAGO, is liable for their actions.

## Count XII – State Law Claim: Trespass

### Defendants Spencer, Haljean, Gaynor, Baeza, Isakson
### Espinosa, Nasser, DeJesus, Saldana, Statsch

108.   Plaintiffs restate each Paragraph of this Complaint as if fully stated herein.

109.   In the manner described more fully above, Defendants knowingly and intentionally intruded upon Plaintiff Michael Ortiz's premises, in which he had a possessory interest.

110.   As a result of the Defendants' unjustified and unlawful trespass, Plaintiff suffered injury, including emotional distress.

## Count XIII – State Law Claim: Conversion

### Defendants Spencer, Haljean, Gaynor, Baeza, Isakson
### Espinosa, Nasser, DeJesus, Saldana, Statsch

111.   Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

112.   As described above, Defendant officers unlawfully intended to, and did, exercise dominion or control over Plaintiff Shannon Guzman's property.

113.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

114.   As a result of Defendant officers' misconduct described in this count, Plaintiff suffered damages, including but not limited to the lost property, for which the Defendant officers are liable.

115.    The misconduct described in this Count was undertaken by Defendant Officers within the scope of their employment such that their employer, CITY OF CHICAGO, is liable for their actions.

## Count XIV – State Law Claim
### *Respondeat Superior*

116.    Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

117.    In committing the acts alleged in the preceding paragraphs, Defendant officers were members of, and agents of, the Chicago Police Department, acting at all relevant times within the scope of their employment.

118.    Defendant City of Chicago is liable as the principal for all torts committed by its agents.

## Count XV – State Law Claim
### Indemnification

119.    Plaintiffs reallege all paragraphs of this Complaint as if fully stated herein.

120.    In Illinois, public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

121.    Defendant officers are or were employees of the City of Chicago, and acted within the scope of their employment in committing the misconduct described herein.

**Request for Relief**

Plaintiffs, APRIL ORTIZ, as Administrator for THE ESTATES OF MAY MOLINA and MICHAEL ORTIZ, and SHANNON GUZMAN respectfully request that the Court:

A.      enter judgment in their favor and against Defendants, CITY OF CHICAGO and DEFENDANTS OFFICERS;

B.      award compensatory damages against Defendants, CITY OF CHICAGO and DEFENDANTS OFFICERS;

C.      award attorneys' fees against Defendants, CITY OF CHICAGO and DEFENDANTS OFFICERS;

D.      award punitive damages against DEFENDANT OFFICERS in their individual capacities; and

E.      grant any other relief this Court deems just and appropriate.


**Jury Demand**

Plaintiffs, APRIL ORTIZ, as Administrator for THE ESTATES OF MAY MOLINA and MICHAEL ORTIZ, Deceased, and SHANNON GUZMAN demand a trial by jury under Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,


S/Mark Reyes

Attorneys for Plaintiff
Arthur Loevy
Jon Loevy
Mark Reyes
LOEVY & LOEVY
312 North May Street, Suite 100
Chicago, IL 60607
(312) 243-5900
(312) 243-5902 (fax)
loevyreyes@aol.com


## CERTIFICATE OF SERVICE

I, Mark Reyes, an attorney, certify that on May 8, 2008, I served this document by ECF electronic filing as to each party who is represented by counsel who uses electronic filing and by first class mail to all other parties.

S/Mark Reyes