IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| APRIL ORTIZ, as personal representative of the ESTATE OF MAY MOLINA, | ) ) ) ) | |
| Plaintiff, | ) ) | 04 C 7423 |
| v. | ) ) | Judge John F. Grady |
| CITY OF CHICAGO, et al. | ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION *IN LIMINE* NO. 19 TO BAR ANY ARGUMENT OR TESTIMONY THAT THE ARREST REPORTS GATHERED FROM THE CPD WAREHOUSE ARE NOT A REPRESENTATIVE SAMPLE**

Now comes Plaintiff, by and through her counsel, LOEVY & LOEVY, and hereby respectfully moves for order *in limine* barring Defendants from arguing or presenting any testimony that the arrest reports gathered by the parties from the warehouse are not a representative or sufficient sample for purposes of Plaintiff's Monell claim. In support of this Motion, Plaintiff states as follows.

**Background**

1. It is undisputed that the Defendant City has a policy and practice that prohibits detainees from taking their medication while they are in the lockup. This is true even for detainees like Ms. Molina, who need medications to stay alive, and who are detained for 20 hours or more.

2.    According to the City, arrestees who require medications are all brought to by ambulance to the hospital, where they are given their medications, and then returned to the lockup.

3.    In support of her <u>Monell</u> claim against the City in this case, Plaintiff has developed evidence that the City had a widespread practice or custom of not taking arrestees needing medication or medical attention to a hospital.  After extensive analysis and investigation by Plaintiff's counsel and her experts, the evidence strongly supports that contention.

### The Parties' Stipulation

4.    In order to streamline the <u>Monell</u> discovery in this case, the parties entered into a stipulation regarding the relevant time period for establishing a policy, practice or custom, and the amount of documents (namely, arrest reports) that the parties would review to determine whether a policy, widespread practice or custom existed during that time period.  A copy of the parties' agreed stipulation is attached hereto as Exhibit U (Stipulation filed on August 15, 2012).

5.    Specifically, the parties agreed that the relevant time period for establishing a policy, practice or custom is May 24, 2000 through May 26, 2004, which is the four years preceding Molina's death.  <u>See id.</u> ¶ 1.  There are approximately one million arrest reports that cover that four-year time period.  <u>Id.</u> ¶ 2.  These arrest

reports are contained in 13,448 folders in a Chicago Police Department warehouse, and there are approximately 70 to 100 arrest reports in each folder.  Id. ¶ 3.

      6.   Since reviewing a million records was impractical, the parties reached an agreed sampling methodology.  In particular, the parties agreed to review the arrest reports contained within 370 of these folders instead of reviewing all 13,448 folders.  Id. ¶ 5.  The stipulation memorializes the parties' agreement that:

> 370 total folders is a representative sample size for purposes of determining whether the Defendant City of Chicago had an inadequate policy, practice or custom in place during the time period May 24, 2000 to May 26, 2004. Neither side will contend that this number of folders is an insufficient sample size from which an expert may reach opinions regarding the total 13,448 folders.

Id. ¶ 4.

      7.   The parties further stipulated that "370 total folders is a sufficient sample size for determining whether a practice, custom or policy existed for purposes of section 1983 municipal liability." Id. ¶ 5.

      8.   Pursuant to this stipulation, the parties designated the specific 370 folders that they would review.  See Exhibit V (E-mails between Wang and Reed dated August 24, 2012 and attachment

showing folder numbers). Another 12 folders[1] were added to the set of folders that the parties reviewed. See Group Exhibit W (E-mails between Wang and Reed dated October 15, 2012 and November 7, 2012, letter from Wang to Reed dated October 15, 2012, and attachment) at 12. In total, 382 folders of arrest reports were reviewed by the parties.

9. In reviewing these folders of arrest reports, Plaintiff pulled from the folders and produced all arrest reports where there was some indication of a medication need or medical problem (or where an arrestee was taken to the hospital even if it did not show on the report that s/he had indicated a medication need or medical problem). *See* Exhibit X (E-mails between Reed and Wang dated August 12, 13, & 14, 2012) at 1. The City agreed with this approach. Id. at 4.

10. Plaintiff reviewed and produced over 3,200 arrest reports (Bates-stamped PM1-PM6688). See Exhibit W (Letter from Wang to Reed dated October 15, 2012) at 2. These arrest reports included instances where arrestees were taken to the hospital as well as instances where arrestees were not. Plaintiff did not pull and

---

[1] Plaintiff had inadvertently left out these 12 folders from the stipulation, but they (along with the 28 referred to in the stipulation) had already been reviewed by Plaintiff's paralegals prior to the stipulation. Since Plaintiff had already reviewed and pulled arrest reports from those 12 folders, Defendants did the same so that both sides were reviewing the same folders.

4

produce every single arrest report contained in the 382 folders because the majority of the arrest reports did not indicate any medication need, medical problem, or transport to a hospital. Arrest reports that showed neither a medication/medical need nor any transport to the hospital were not relevant to Plaintiff's Monell claim.

      11.    Again, Defendants agreed with this approach. They reviewed the same 382 folders and produced 60 arrest reports (Bates-stamped IDL 01337-IDL 01458) that Plaintiff's staff had overlooked in their review of the folders.[2] See Exhibit Y (E-mail from Reed to Wang dated January 8, 2013). Defendants represented that they "reviewed the arrest reports from the stipulated folders to make sure all relevant reports were flagged." Id. They further represented that their 60 arrest reports were the "additional arrest reports found which indicate an arrestee was taken to the hospital." Id. "Additional" meaning in addition to the approximately 3,200 arrest reports that Plaintiff had already pulled and produced.

      12.    Because Defendants had the same understanding of what arrest reports would be relevant to the Monell claim as Plaintiff, Defendants also did not pull and produce every single arrest report in the 382 folders they reviewed. (If they had, they would have produced approximately 30,000 arrest reports and they did no such

---

[2] Ultimately, Plaintiff's staff overlooked less than 2% of the total relevant arrest reports in the 382 folders (60/3260 = < 2%).

5

thing.) In total, over 3,260 arrest reports were pulled and produced by both parties after their review of the designated 382 folders at the Chicago Police Department warehouse.

13. Both sides' Monell experts have reviewed these approximately 3,260 arrest reports, as well as a spreadsheet summarizing the information contained on the arrest reports which Plaintiff's counsel provided to her experts. The Defendants created their own spreadsheet, with minor differences.

14. Plaintiff's experts have concluded, based in part on this information, that the City has a widespread practice or custom of not taking arrestees needing medication or medical attention to hospitals for treatment. Specifically, 83% of arrestees within the over 3,260 arrest reports indicated a medication or medical need but were not taken out of lockup to go to a hospital. See Exhibit E (Brasfield report) at 9-10; Exhibit Z (Summary page from spreadsheet of arrest reports). Even if revised downward significantly to account for various critiques by the defense, the evidence would still show that the City had a widespread practice or custom of not taking arrestees needing medication or medical attention to a hospital for treatment. See Exhibit AA (Brasfield Dep. at 259-60). Defendants' experts have reached different conclusions, and the jury will make the determination which story makes more sense.

6

**Relief Sought**

15. Having reached an agreed stipulation to engage in sampling based on an agreed upon sample size of data, neither side should be permitted to make arguments or take positions about the sufficiency *vel non* of the number of records reviewed. The parties' agreed *ex ante* that the sample size was substantial enough to permit extrapolation, and any contrary argument should not be permitted.

WHEREFORE, Plaintiff respectfully requests an order barring either side from making arguments or soliciting testimony that is inconsistent with the sampling stipulation reached by the parties.

RESPECTFULLY SUBMITTED,

S/ Jon Loevy

Attorneys for Plaintiff
Arthur Loevy
Jon Loevy
Anand Swaminathan
Elizabeth Mazur
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607

**CERTIFICATE OF SERVICE**

I, Jon Loevy, an attorney, certify that I served this document by ECF electronic via all counsel of record.

S/ Jon Loevy
Attorneys for Plaintiff

7